UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INTEGRO USA, INC.,

                         Petitioner,

                      -v-

ETHAN CRAIN *et al.*,

                         Respondents.

19-CV-8752 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

      This case arises out of eleven former employees' exodus from Petitioner Integro USA, Inc. ("Integro") to a competitor firm, Marsh USA, Inc. ("Marsh"). (Dkt. No. 1 ("Pet.") ¶ 1.) In the course of their departure, Integro claims, the Respondent employees violated their non-solicitation agreements with Integro, and misappropriated trade secrets in violation of the common law and the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(c). (Pet. ¶ 18.) Both parties agree that the merits of the underlying dispute will be resolved in arbitration rather than in federal court. (*See* Pet. ¶ 5.) Yet Integro seeks interim relief enjoining Defendants from soliciting or attempting to solicit any of Integro's employees or clients and from disclosing or otherwise misappropriating Integro's trade secrets while the arbitration proceeds. (Pet. at 19.) For the reasons that follow, the Court denies the petition as to the misappropriation of trade secrets claims and declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the remaining state law claims are dismissed without prejudice.

**I.**     **Background**

      Because, as explained below, the Court declines to exercise supplemental jurisdiction over most of the claims, the Court confines its background and findings to those facts directly

relevant to the misappropriation of trade secrets claims. Integro is an insurance brokerage and risk management consulting firm. (Pet. ¶ 1.) On September 16, 2019, Respondents[1] — eleven employees of Integro's Northeast-based large account healthcare property and casualty unit — resigned simultaneously and without prior notice to join Marsh, a competitor firm. (*Id.*) Each of the Respondents is party to an employment agreement with Integro, and though the agreements vary, each contains an arbitration provision. (*See* Dkt. Nos. 6-1 to 6-11.)

Respondents William McDonough and Ethan Crain were the leaders of Respondents' team at Integro. (Pet. ¶ 25.) On the morning of the resignations, McDonough emailed a colleague requesting an "update . . . on the stop loss program" for a client identified in the email as "UMHHC/UMass Memorial." (Dkt. No. 6-19 at 9.) McDonough stated that he was having "major computer [problems]" and therefore could not "find the report/update." (*Id.*) He explained that he needed "the typical general update for the CPAC Board meeting on October 4, 2019." (Dkt No. 6-19 at 8.) After the colleague responded with several reports, McDonough replied requesting a "current picture of the program." (Dkt No. 6-19 at 6.) "My laptop," he explained, "is in 'blanked up mode.'" (*Id.*) The contact responded with what he described as a "schematic of the placement." (Dkt No. 6-19 at 3.) McDonough resigned later that day. (Pet. ¶ 46.)

Petitioner's forensic investigation of Respondents' work computers revealed some anomalous activity in the days and weeks leading up to the resignation. For example, in the week before his departure, McDonough's computer was connected to a USB storage device for the first time in three months, and hundreds of files were deleted from the computer. (*See* Dkt.

---

[1] Respondents are Ethan Crain, William McDonough, Joanne Wankmiller, Diana Alessandrini, Gary Neal Wallace, Eileen Flaherty, Anne Chang, Debra Goddeau, Peter Lavery, Alexander Heide, and Eva Gee. (*See* Pet. ¶¶ 7–17.)

2

No. 17-3 ¶¶ 3–8.)  A Google search was executed on his computer the day before his departure for the string "how to back up iphone to icloud."  (Dkt. No. 27 ¶ 8.)  A USB device was connected to Respondent Joanne Wankmiller's computer for the first time in eight months several weeks before her departure.  (*See* Dkt. No. 17-3 ¶ 9.)  Respondent Eva Gee deleted 190 files on the day she resigned from the company.  (*See* Dkt. No. 17-3 ¶ 19.)  And several of the respondents whose computers were analyzed accessed documents allegedly containing confidential client information in the days and weeks before the resignation.

Integro filed its petition for a temporary restraining order and preliminary injunction in aid of arbitration on September 20, 2019, arguing that Respondents were soliciting Integro clients and employees in violation of their non-solicitation agreements and were disclosing trade secrets in the process.  (*See* Pet.)  The parties appeared for a hearing on the petition on September 23, 2019.  (*See* Dkt. No. 23 ("Tr.").)  The Court declined to enter a temporary restraining order at that time but set a briefing schedule on the matter.  (*See* Tr. 36:19–37:6.)  On September 26, 2019, Respondents submitted a memorandum of law in opposition to the petition (Dkt. No. 14) as well as supporting declarations (Dkt. No. 15.).  On September 30, 2019, Integro submitted its reply in support of the petition and additional supporting declarations, including the analysis of its forensic electronics expert.  (Dkt. No. 17.)  On October 4, 2019, and with leave of the Court, Respondents filed a sur-reply and supporting declarations.  (Dkt. No. 25.)  Finally, on October 7, 2019, Integro filed two supplemental declarations and a motion to expedite and supplement the record.[2]  (Dkt. Nos. 27–29.)

---

[2] The motion to supplement the record was unopposed and is granted.

### A. Legal Standard

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, courts must "enforce privately negotiated agreements to arbitrate . . . in accordance with their terms." *Volt Info. Scis., Inc. v. Leland Stanford, Jr. Univ.*, 489 U.S. 468, 478 (1989). But as the Second Circuit has explained, "Arbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*, 910 F.2d 1049, 1053 (2d Cir.1990). By entering a preliminary injunction in aid of arbitration, a district court may therefore "ensure that the parties get what they bargained for — a meaningful arbitration of the dispute." *Id.* at 1053.

The standard for issuance of a preliminary injunction in aid of arbitration is essentially the same as that for any other preliminary injunction. *See Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010). In the Second Circuit, a "party seeking a preliminary injunction [must] show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citation omitted). In order to satisfy the "likelihood of success on the merits" standard, a plaintiff must show "that [her] ultimate success on the merits is more likely than not." *Id.* at 35.

## II. Discussion[3]

### A. Misappropriation of Trade Secrets

Integro has failed to show a likelihood of success on the merits of its trade secrets claims because the evidence does not support the inference that Defendants misappropriated any trade secret.[4] The DTSA "provides a private cause of action to the owner of a trade secret that is misappropriated." *Opternative, Inc. v. JAND, Inc.*, No. 17 Civ. 6936, 2019 WL 624853, at *6 (S.D.N.Y. Feb. 13, 2019) (internal quotation marks and citation omitted). Misappropriation, as relevant here, is defined by the DTSA as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[, or] disclosure or use of a trade secret of another without express or implied consent by a person who[]used improper means to acquire knowledge of the trade secret." 18 U.S.C. § 1839(5). "The DTSA, therefore, contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Opternative*, 2019 WL 624853, at *6 (internal quotation marks and citation omitted). To prevail on a New York misappropriation of trade secret claim, "a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an

---

[3] Respondents argue that Integro lacks standing to bring the petition because Integro has been acquired by another entity, Edgewood Partners Insurance Center ("EPIC"), and EPIC has retired the Integro brand. (*See* Dkt. No. 14 at 4–5.) But Integro submitted evidence indicating that Integro persists as a distinct corporate entity. (*See* Dkt. No. 18.) Integro has therefore satisfied the Court that, notwithstanding EPIC's purchase of Integro's stock, Integro has an injury-in-fact sufficient to confer constitutional standing.

[4] Integro has also requested that it be given the opportunity to conduct expedited discovery before its petition for a preliminary injunction is decided. (*See* Dkt. No. 17 at 5–10.) But it has failed to show even a minimal chance of success on the merits of its misappropriation of trade secrets claim, and there is therefore no good cause justifying expedited discovery. *See Levy v. Young Adult Inst., Inc.*, No. 13 Civ. 2861, 2015 WL 170442, at *6, *11 (S.D.N.Y. Jan. 13, 2015).

5

agreement, confidential relationship or duty, or as a result of discovery by improper means." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999).

Integro argues that McDonough's obtaining the UMass schematic on the day he resigned, in light of Respondents' general course of conduct, supports their misappropriation of trade secrets claim. (*See* Pet. ¶ 45.) The emails between McDonough and other employees detailed above do indeed show that he requested and received via email some work product, which McDonough does not dispute. (*See* Dkt. No. 15-2 ¶¶ 13–18.) But the inferential leap that Integro asks the Court to make — from this conversation to misappropriation of a trade secret — is a leap too far. Integro has submitted no evidence in support of its theory that McDonough lied about his computer problems in order to obtain the schematic, nor that he improperly used or disclosed the schematic. And McDonough attested in a sworn declaration that his email was truthful and that he sought the schematic in order to include it in a presentation he was preparing for a routine meeting with the board of UMass's captive insurance company. (*See* Dkt. No. 15-2 ¶ 13.) Indeed, Integro has not meaningfully disputed McDonough's account, either in its reply briefing or with its own evidence. In short, McDonough attests, and the only evidence before the Court on this point suggests, that he requested and used the schematic in furtherance of his duties and did not improperly acquire, use, or disclose the alleged trade secret. Thus, even if the schematic is a trade secret[5] — an assumption that Respondents vigorously dispute — Integro has failed to show a likelihood of success on the theory that it was misappropriated under federal or

---

[5] A "trade secret" is any "type[] of financial, business, scientific, technical, economic, or engineering information . . . whether tangible or intangible, . . . [if] the owner thereof has taken reasonable measures to keep such information secret[] and[]the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

New York law. And Integro has not identified any other specific trade secret allegedly misappropriated by Respondents. It therefore fails to meet the bar for interim relief on its misappropriation of trade secret claims.[6]

### B. Remaining State Law Claims

Finally, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, which largely sound in contract.[7] "The district court[] may decline to exercise supplemental jurisdiction" if, as relevant here, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Typically, the denial of a preliminary injunction or other interim relief does not occasion a dismissal that would trigger the Court's discretion under the supplemental jurisdiction statute. But the present case is something of a procedural oddity. Integro seeks only an injunction to preserve the status quo during arbitration; upon the denial of the request for interim relief, there remains no underlying claim for permanent relief before the Court. The federal law claims have thus been "eliminated before trial," triggering the Court's discretion under the supplemental jurisdiction statute. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also, e.g.*, *In re M.B. Int'l W.W.L.*, No. 12 Civ. 4945, 2012 WL 3195761, at *14 (S.D.N.Y. Aug. 6, 2012) (closing case after the denial of the motion for a preliminary injunction in aid of arbitration).

"In the usual case" in which federal law claims have dropped out before trial, "the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the

---

[6] Because this is a sufficient ground to reject Integro's request for interim relief, the Court does not reach the question whether Integro has shown irreparable harm.

[7] There is no assertion that Integro is entitled to invoke this Court's diversity jurisdiction, and the only federal law claim Integro asserts is the DTSA claim.

7

remaining state-law claims." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 285 (S.D.N.Y. 2019) (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7). However, where the state law claim has been rendered "obvious" because, in the course of adjudicating a federal claim, the court has "decided an issue . . . dispositive of the state law claim," a departure from that general practice is warranted. 13D Wright & Miller, Fed. Prac. & Proc. § 3567.3 (3d ed. 2019). Integro's common law misappropriation of trade secrets claim raises just those circumstances, and therefore is properly the subject of the Court's discretionary exercise of supplemental jurisdiction. However, the Court sees no reason to deviate from the typical practice with respect to the contract claims. The adjudication of the federal claim has not advanced the ball with respect to the contract claims because they rest on different factual and legal predicates than the DTSA claim. And the contract claims may turn on subtle questions of state law; for example, the parties have directed much of their briefing to arguing whether the covenants not to solicit clients are unenforceable under New York law because the client relationships predated Respondents' tenure at Integro, *see BDO Seidman v. Hirschberg*, 93 N.Y.2d 382, 388–89 (1999), or whether they instead fall within an exception to that general rule because Integro had either purchased or substantially invested in cultivating the relationships, *see Johnson Controls, Inc. v. A.P.T. Critical Sys. Inc.*, 323 F. Supp. 2d 525, 536 (S.D.N.Y. 2004). Accordingly, the interests of judicial economy and comity are served by the Court declining to exercise supplemental jurisdiction over the remaining claims.

    For the foregoing reasons, Integro's petition for a preliminary injunction in aid of arbitration is DENIED as to the misappropriation of trade secrets claims. It is DISMISSED WITHOUT PREJUDICE as to the remaining contract law claims.

The Clerk of Court is directed to close the motion at Docket Number 29 and to close the case.

SO ORDERED.

Dated: November 14, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge